UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SALLY BEAUTY HOLDINGS, INC. and BEAUTY SYSTEMS GROUP LLC d/b/a COSMO PROF, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. _____ |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, | § § § § | |
| Defendant. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Sally Beauty Holdings, Inc. and Beauty Systems Group LLC d/b/a Cosmo Prof (collectively, "Plaintiffs" or "Sally Beauty") file this Original Complaint against Hartford Accident and Indemnity Company ("Hartford" or "Defendant") and respectfully show the Court the following:

## I.  INTRODUCTION

1.     This case involves Hartford's failure to honor its admitted duty to defend Sally Beauty in underlying lawsuits alleging bodily injury from the use of hair dye products (the "Hair Dye Litigation") and related statutory violations.  Hartford issued liability insurance policies that obligate Hartford to defend Sally Beauty. Hartford acknowledged that the Hair Dye Litigation triggered its policies' defense coverage and agreed to defend Sally Beauty in the Hair Dye Litigation.  Even so, Hartford breached its policies by (a) refusing to pay the vast majority of Sally Beauty's defense costs; (b) failing to promptly pay even the small fraction of defense costs it has agreed to pay; (c) providing no basis for only paying a negligible percentage of the defense cost

invoices it has reviewed; and (d) offering to pay only a portion of Sally Beauty's defense costs when it owes a complete defense.  Hartford has engaged (and continues to engage) in unfair and deceptive conduct that violates several statutes and entitles Sally Beauty to recover interest, attorneys' fees, and additional damages.

## II.  PARTIES

2.      Plaintiff Sally Beauty Holdings, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.

3.      Plaintiff Beauty Systems Group LLC d/b/a Cosmo Prof is a limited liability company organized and existing under the laws of the State of Virginia with its principal place of business in Plano, Texas.  Beauty Systems Group LLC's sole member is Sally Holdings LLC, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Plano, Texas.  Sally Holdings LLC's sole member is Sally Investment Holdings LLC, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Plano, Texas.  Sally Investment Holdings LLC's sole member is Plaintiff Sally Beauty Holdings, Inc., a Delaware corporation with its principal place of business in Plano, Texas.

4.      Defendant Hartford Accident and Indemnity Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  It is engaged in the business of insurance in the State of Texas and can be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136.

## III.  JURISDICTION & VENUE

5.      Sally Beauty adopts and incorporates by reference the foregoing allegations.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because (a) Defendant is not a citizen of any state of which Plaintiffs are also citizens and (b) the amount in controversy exceeds $75,000, excluding interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Collin County, Texas.  Hartford issued insurance policies covering Sally Beauty in Collin County, Texas, failed to honor its obligations to Sally Beauty under those policies, and engaged in unlawful conduct in handling Sally Beauty's claim for insurance coverage in Texas.

## IV.  FACTUAL BACKGROUND

8.      Sally Beauty adopts and incorporates by reference the foregoing allegations.

9.      Sally Beauty is a Texas-based international beauty products retailer and distributor.

10.     Sally Beauty Holdings, Inc. is the ultimate parent of the Sally Beauty group of companies, including Beauty Systems Group LLC d/b/a Cosmo Prof, which distributes professional beauty products (including hair dye products) exclusively to salons and licensed beauty professionals and generally operates under the "Cosmo Prof" banner.

11.     Hartford issued numerous liability policies covering Sally Beauty, including two completed operations and products liability insurance policies covering the period from 1983 to 1985 (collectively, the "Policies").

12.     Among other things, the Policies cover "all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . covered within . . . the products hazard . . . ."  The Policies define "products hazard" to include bodily injury arising from the insured's products "or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury . . . occurs away from a premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

13.    The Policies also provide that Hartford has "the right and duty to defend any suit against the insured seeking damages on account of [covered] bodily injury . . . , even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

14.    In April 2025, Sally Beauty was first sued in several underlying lawsuits alleging claims for bodily injury arising out of the exposure to and use of their hair dye products.  The lawsuits allege bodily injury occurring during the Policies' periods of coverage.  The lawsuits also allege that Sally Beauty "engaged in the manufacturing, packaging, advertising, and distributing of . . . [the hair dye products] at issue . . . throughout the United States."

15.    Since this time, Sally Beauty has been named as a defendant in 30 lawsuits with the same or similar allegations filed in federal and state courts in California and New York.  The term "Hair Dye Litigation" refers collectively to all such lawsuits brought against Sally Beauty.

16.    Shortly after being served with the first Hair Dye Litigation lawsuits, on April 29, 2025, Sally Beauty tendered the Hair Dye Litigation to Hartford and requested that Hartford defend and indemnify Sally Beauty in connection with the Hair Dye Litigation.  Sally Beauty promptly tendered additional Hair Dye Litigation lawsuits to Hartford following receipt.  In total, Sally Beauty tendered 27 Hair Dye Litigation lawsuits to Hartford.[1]

17.    Hartford did not timely acknowledge receipt of Sally Beauty's insurance claim, commence its investigation, request additional information, or notify Sally Beauty of its acceptance or rejection of the claim.  Specifically, Hartford did not acknowledge receipt of Sally Beauty's claim or notify Sally Beauty of its acceptance or rejection of the claim until October 13, 2025 – more than five months after receiving Sally Beauty's claim.

---

[1] Three Hair Dye Litigation lawsuits were voluntarily dismissed shortly after filing.

18.     On October 13, 2025, Hartford's Texas-based claims handler issued a letter to Sally Beauty's counsel in Texas.  In this letter, Hartford acknowledged that the Hair Dye Litigation alleged bodily injury that triggered the Policies' duty to defend Sally Beauty.  Hartford also agreed to defend Sally Beauty in the Hair Dye Litigation subject to a reservation of rights.  However, Hartford inappropriately stated that it would only pay "its appropriate share [of] Sally's defense" in the Hair Dye Litigation.  Hartford also improperly reserved the right to seek reimbursement or recoupment of defense costs it paid to or on behalf of Sally Beauty.

19.     Sally Beauty informed Hartford that it intended to retain the law firm Alston & Bird LLP to defend the Hair Dye Litigation, and Hartford expressly consented to Alston & Bird's retention.  Sally Beauty also provided Hartford with Alston & Bird's proposed staffing and rate structure, to which Hartford did not object.  Sally Beauty and/or Alston & Bird then regularly submitted defense cost invoices to Hartford promptly after their issuance beginning in March 2026 and each month thereafter, and Hartford did not object to any entries or charges included in such invoices.

20.     Sally Beauty was ultimately able to obtain dismissals of all pending Hair Dye Litigation lawsuits.  However, because of the volume and complexity of the Hair Dye Litigation, Sally Beauty incurred considerable attorneys' fees and costs to defend the suits and obtain the dismissals.

21.     Despite its agreement to defend Sally Beauty and its consent to Sally Beauty's retention of defense counsel, Hartford paid none of Sally Beauty's mounting defense costs in the

Hair Dye Litigation until July 2026.  Even then, it paid a small fraction of Sally Beauty's total defense costs amounting to less than 5% of defense costs to date.[2]

22.     Hartford is a large, sophisticated insurance company that handles many thousands of liability insurance claims each year.  Yet, from the onset, it has not attempted to properly handle Sally Beauty's claim or comply with its contractual and legal obligations.  Hartford failed to promptly (a) acknowledge and investigate Sally Beauty's claim; (b) notify Sally Beauty of its acceptance or rejection of the claim; (c) provide Sally Beauty with a reasonable explanation for the portions of the claim it rejected; and (d) pay Sally Beauty's defense costs pursuant to its admitted duty to defend.  After months of representing that payment was forthcoming (and more than a year after receiving Sally Beauty's claim), Hartford for the first time made a minimal payment toward Sally Beauty's defense in July 2026.  Hartford's Texas-based claims handler provided only cursory comments explaining certain of its defense invoice entry reductions and no explanation for reducing all of Alston & Bird's hourly rates (of which it was notified in advance and did not object) by more than half or further reducing all undisputed amounts by more than 80% based on its purported "allocation."

23.     Having acknowledged a duty to defend, Hartford must provide Sally Beauty with a complete defense.  A complete defense requires that Hartford pay for the entire cost of defending the Hair Dye Litigation, not the portion that Hartford unilaterally deems appropriate.  The fact that other insurers may also cover Sally Beauty does not excuse Hartford's complete defense duty.[3]

---

[2] Hartford's Texas-based claims handler notified Sally Beauty about Hartford's agreement to make such payment and directed such payment to Sally Beauty's counsel in Texas.

[3] Under well-established Texas law, the duty to defend requires an insurer to provide its insured with a **complete defense**, not a partial or pro rata defense, even if part of a claim falls outside the policy period.  *See Tex. Prop. & Cas. Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.,* 982 S.W.2d 600, 606-07 (Tex. App.—Austin 1998, no pet.); *see also Trinity Universal Ins. Co. v. Emps. Mut. Cas. Co.*, 592 F.3d 687, 695 (5th Cir. 2010) (applying *Southwest Aggregates* and noting that "uniform holdings of Texas courts" support the conclusion "that if even a single claim in a lawsuit potentially falls within an insurance policy's coverage, the insurer has a duty to provide a *complete* defense" (emphasis in original)).  If an insured's claim for defense triggers multiple policies, each insurer separately owes the

24.     Hartford's delays and refusals to pay Sally Beauty's defense costs are wrongful under applicable law and the Policies.

## V.  CAUSES OF ACTION

### A.      Breach of Contract

25.     Sally Beauty adopts and incorporates by reference the foregoing allegations.

26.     The Policies are valid and enforceable contracts.

27.     As an insured under the Policies, Sally Beauty is a proper party to bring this action to recover benefits under the Policies.

28.     Sally Beauty provided Hartford with timely notice of the Hair Dye Litigation and its claim for defense and indemnity coverage for the Hair Dye Litigation.

29.     Sally Beauty has also performed or is excused from performing all other conditions precedent to coverage under the Policies.  Sally Beauty has also fully performed or is excused from performing all its other obligations under the Policies.  Alternatively, Hartford failed to exercise

---

insured a complete defense.  *Sw. Aggregates,* 982 S.W.2d at 604, 606-07; *see also Colony Nat'l Ins. Co. v. United Fire & Cas. Co.*, 677 F. App'x 941, 947 (5th Cir. 2017) ("Under Texas law, when coverage is triggered under policies issued by different insurers for a claim of injury, the duty to defend is absolute because the insurance contract requires the insurer to defend the insured, not merely to provide a partial or pro rata defense.  Each insurer whose policy obligations are triggered independently owes the insured a complete defense."); *Trinity Universal*, 592 F.3d at 695 (noting that, because an insurer must provide a complete defense, where a claim triggers multiple policies, "the duty to defend creates 'a debt which is equally and concurrently due by'" all of the applicable insurers (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007)).

If multiple policies cover a claim, the insurers are free to apportion the defense costs amongst themselves or pursue each other for contribution, but any such arrangement between or actions by the insurers do not affect the insurers' contractual obligation to provide the insured a complete defense.  *Sw. Aggregates,* 982 S.W.2d at 604, 606-07.  Texas courts have long-recognized that insurers cannot use the existence of multiple triggered policies to place the insured in a worse position than if only one was triggered because such a "result would be unconscionable." *See Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 586 (Tex. 1969) (agreeing that "whatever result we reach about the insurers' rights [against each other with respect to a claim that triggers both insurers' duty to defend], the insured's coverage must be no less than if she had been protected by only one of the policies . . . [and that any other approach] would lead to a conclusion that the insured, though possessed of two policies, actually had none at all" and warning against multiple insurers failing to defend their insured during "the long delay of several years duration . . . while the insurers litigate whether she is covered by insurance and who will defend her").

---

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                                    **PAGE 7**

its rights, waived and/or forfeited its rights, and/or is estopped from asserting any conditions precedent or other defenses to coverage.

30.    The Policies plainly obligate Hartford to defend Sally Beauty in the Hair Dye Litigation.  Alternatively, the Policies are ambiguous and must be interpreted in favor of coverage.

31.    Hartford is obligated to timely pay Sally Beauty's costs to defend the Hair Dye Litigation.

32.    Hartford breached the Policies by refusing and delaying payment of Sally Beauty's defense costs.

33.    Sally Beauty has been damaged by Hartford's breaches of the Policies in an amount exceeding $75,000.

34.    Sally Beauty seeks to recover the actual and consequential damages caused by Hartford's breaches.

**B.    Violation of the Texas Prompt Payment Statute**

35.    Sally Beauty adopts and incorporates by reference the foregoing allegations.

36.    Sally Beauty's claim for a defense is a first-party claim.

37.    Sally Beauty provided timely notice of its claim on April 29, 2025 and submitted defense cost invoices to Hartford soon after their issuance beginning in March 2026 and each month thereafter.

38.    Hartford's unjustified refusals to promptly acknowledge, investigate, and pay Sally Beauty's submitted defense costs, and to promptly explain its reasons for not paying rejected costs, violate the Texas Prompt Payment of Claims Act (Texas Insurance Code Section 542.051 *et seq*.).

39.    Hartford violated the Texas Prompt Payment of Claims Act by failing to (a) acknowledge receipt of Sally Beauty's claim; (b) commence its investigation of the claim; and/or (c) request all information it reasonably believed was necessary to investigate the claim, all within

15 days of receipt. *See* Tex. Ins. Code Ann. § 542.055. In particular, Hartford did not formally acknowledge receipt of or respond to Sally Beauty's claim notice until October 13, 2025. Upon information and belief, Hartford did not commence its investigation of Sally Beauty's claim until just prior to issuing its October 13, 2025 coverage position letter (or, in any event, long after the 15-day deadline had passed) and did not commence its evaluation of any defense cost invoice within 15 days of receiving them. Hartford did not request additional information in such October 2025 letter, prior to issuing it, or after receiving any defense cost invoice.

40. Hartford also violated the Texas Prompt Payment of Claims Act by failing to (a) accept or reject Sally Beauty's claim for defense and/or (b) provide Sally Beauty with an explanation for any rejected amounts within 15 business days of receiving the claim and/or each defense cost invoice. *Id.* § 542.056. Sally Beauty notified Hartford of its intention to retain Alston & Bird in December 2025 (to which Hartford consented) and provided Hartford with Alston & Bird's proposed staffing and rate structure in January 2026. Hartford also received defense invoices from Alston & Bird at least monthly from March 2026 onward. Hartford did not notify Sally Beauty of any objections to Alston & Bird's proposed staffing and rate structure, nor did it notify Sally Beauty of its intent to pay any such invoice in full or what portions of such invoices it rejected, within 15 business days of receipt. Additionally, Hartford did not explain its reasons for rejecting more than 95% of the invoiced amounts within 15 business days. To date, Hartford's only explanation is a cursory summary of certain line-item reductions provided on July 17, 2026, which summary was untimely, did not address all submitted defense invoices, and did not explain the basis for a vast majority of defense costs Hartford rejected.

41.     Finally, Hartford violated the Texas Prompt Payment of Claims Act by failing to pay Sally Beauty's claim within 20 business days.  *Id.* § 542.056.  In particular, Hartford failed to pay any portion of any defense cost invoice it received within the statutory deadline.

42.     Hartford's violations of the Texas Prompt Payment of Claims Act entitle Sally Beauty to recover from Hartford the automatic penalties of 18% interest per annum on all unpaid defense amounts and Sally Beauty's reasonable and necessary attorneys' fees.  *Id.* §§ 542.058, 542.060.

**C.    Attorneys' Fees**

43.     Sally Beauty adopts and incorporates by reference the foregoing allegations.

44.     Due to Hartford's actions, Sally Beauty has been required to retain the services of the law firm Wick Phillips Gould & Martin LLP.  Sally Beauty has agreed to pay Wick Phillips Gould & Martin LLP a reasonable fee for its services necessarily rendered and to be rendered in this action.  Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and the Texas Prompt Payment of Claims Act, Sally Beauty is entitled to an award of its reasonable attorneys' fees against Hartford in an amount to be established at trial.

**VI.  NOTICE OF INTENT TO PURSUE CLAIMS**
**UNDER TEXAS INSURANCE CODE CHAPTER 541**

45.     Sally Beauty adopts and incorporates by reference the foregoing allegations.

46.     Pursuant to Texas Insurance Code Section 541.154, Sally Beauty hereby provides notice of its intent to pursue claims against Hartford for its violations of the Texas Unfair Claims Settlement Practices Act (Texas Insurance Code Section 541.001 *et seq.*) by amending this suit after the applicable statutory notice period.

47.     Hartford is licensed in and engages in the business of insurance in Texas.

---

48.     Hartford has engaged in (and continues to engage in) unfair and deceptive claims settlement practices with respect to its Texas-based insured Sally Beauty's claim that violates the Texas Unfair Claims Settlement Practices Act.

49.     Hartford, through its Texas-based claims handler, misrepresented material facts, the Policies' benefits, and/or the Policies' terms related to coverage in violation of Texas Insurance Code Sections 541.051 and 541.060(a)(1).  In its October 13, 2025 coverage position letter and its July 17, 2026 message transmitting its agreement to pay less than 5% of Sally Beauty's defense costs, Hartford misrepresented that the Policies provide for a partial or allocated duty to defend. Hartford's October 13, 2025 letter also misrepresented that the Policies afford Hartford a right to seek reimbursement/recoupment of defense costs. The Policies do not contain any right to allocation or reimbursement, nor is allocation or reimbursement permitted under applicable law. Even so, Hartford continues to misrepresent that it has such rights.

50.     Hartford has not attempted to promptly provide Sally Beauty with a reasonable explanation based on the Policies' terms, in relation to the facts or applicable law, for its significant delay in paying and refusal to pay a vast majority of Sally Beauty's claim in violation of Texas Insurance Code Section 541.060(a)(3).  The cursory comments provided in Hartford's "audit" of certain defense invoices – which Hartford just recently provided on July 17, 2026 – contained no reasonable explanation for its rejection of a significant number of time entries other than that Hartford rejected them pursuant to nebulous "industry billing practices" that were not included in the Policies or otherwise provided to Sally Beauty or Alston & Bird.

51.     Hartford also failed to provide a reasonable explanation for reducing all Alston & Bird attorneys' hourly rates by 60% or more, despite Hartford previously consenting to Alston &

Bird's retention as defense counsel and receiving Alston & Bird's proposed staffing and rate structure without objection six months prior.

52.    Finally, Hartford provided no reasonable explanation for further reducing all approved amounts by more than 80% based on its unsupportable "allocation."

53.    Hartford knowingly committed these unfair and deceptive claims settlement practices that violated the Texas Unfair Claims Settlement Practices Act.

54.    Sally Beauty intends to seek recovery of its actual damages of the total amount of unpaid defense costs, treble damages, and its reasonable and necessary attorneys' fees and expenses (which Sally Beauty currently estimates total $25,000 and will continue to increase) as a result of Hartford's violations of the Texas Unfair Claims Settlement Practices Act.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Sally Beauty respectfully requests that the Court enter a judgment against Hartford in the amount of Sally Beauty's: (a) actual and consequential damages caused by Hartford's breaches of the Policies; (b) interest of 18% per annum on the amounts owed under the Texas Prompt Payment of Claims Act; (c) reasonable and necessary attorneys' fees incurred in this action; (d) pre-judgment and post-judgment interest in the amount allowed by law; and (e) costs of court.  Sally Beauty also asks that the Court grant it all such other and further relief to which it may be entitled.

Dated: August 10, 2026

Respectfully submitted,

*/s/ Erika Bright*
Erika Bright
Texas Bar No. 24001752
erika.bright@wickphillips.com
Britton D. Douglas
Texas Bar No. 24056731
britton.douglas@wickphillips.com
Megan E. Servage
Texas Bar No. 24110347
megan.servage@WickPhillips.com

**WICK PHILLIPS GOULD & MARTIN LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**ATTORNEYS FOR PLAINTIFFS**
**SALLY BEAUTY HOLDINGS, INC. AND**
**BEAUTY SYSTEMS GROUP LLC D/B/A**
**COSMO PROF**